# Pinkus *v.* Bamberger, Bloom & Co.

*Contested Claim of Exemption of Personal Property.*

1. *Sufficiency of inventory.*—When a debtor claims as exempt a stock of goods which is in the possession of the sheriff under the levy of an attachment, it is sufficient to describe the goods in his inventory as they are described in the levy and inventory of the sheriff.

[Pinkus v. Bamberger, Bloom & Co.]

2. *Fraudulent conduct of debtor, as affecting claim of exemption.*—When the inventory filed by a debtor, claiming an exemption of personal property, is contested by attaching creditors, his fraudulent conduct in collusion with another person, who first sued out an attachment, is not relevant to the issue involved, except so far as it shows that he had other moneys or effects not included in his inventory.

3. *Contest of inventory; what should be included in it.*—When a debtor's inventory of property claimed as exempt, which is contested by attaching creditors, includes only a stock of goods valued at less than $1 000, and the evidence shows that their value exceeds that sum, the excess should be deducted from his claim; and if it is shown that he either received or paid out moneys, at any time between the interposition of his claim of exemption and the filing of his inventory, that amount also should be deducted; but, if it is shown that he has transferred to a creditor outstanding notes and accounts, nominally in excess of his debt. with a stipulation that any excess, if collected, shall be paid to him, he can not be charged with any excess, in the absence of evidence showing what amount has been or may be collected; yet he should state the facts in his inventory.

APPEAL from the City Court of Decatur.

Tried before the Hon. WM. H. SIMPSON.

The appellees in this case, several mercantile partnerships, sued out attachments against Isaac Pinkus, a merchant doing business at Decatur under the name of I. Pinkus & Co.; and their attachments were levied on the same stock of goods. These several attachments were levied on the 5th–7th March, 1890, and Pinkus filed with the sheriff, on the day last named, a claim of exemption to the goods. On the 3d March, prior to these several levies, an attachment had been sued out against said Pinkus by one Herbert Cartwright, and his attachment was, on that day, levied on the same stock of goods. After the levy of the subsequent attachments, the plaintiffs therein each filed a bill on the equity side of the court, against Pinkus and Cartwright, attacking the proceedings under Cartwright's attachment, on the ground of fraud and collusion between him and Pinkus, and seeking to subject the attached goods to the satisfaction of the plaintiffs' several debts. In these several suits, Pinkus again filed his claim of exemption. On the 18th April, 1890, the plaintiffs demanded an inventory of his property from Pinkus; and on the 21st April, in response to this demand, he filed an inventory, in the nature of an amendment of his claim of exemption, claiming the same stock of goods, describing them as in the sheriff's inventory and levy, and alleging that he could not give a more definite description of them because they were in the possession of the sheriff. The plaintiffs excepted to the sufficiency of this inventory, but the court held it sufficient; and they then filed a contest

of the claim of exemption, on the ground that it was "invalid entirely." The issue formed on the contest being submitted to the decision of the court, on the evidence taken by depositions, the court held that the "subsequent filing of the petition on the equity side of the court, and the answer thereto, present the issue provided by section 2531—that the defendant has other personal property, subject to levy and sale under the attachments, not embraced in the inventory." On this issue, the court found that Pinkus was chargeable with $372.35, moneys traced to his possession after filing his claim of exemption, and $485, the value of his notes and accounts transferred to one Friedman, in excess of the debt due to him; and deducting the aggregate of these sums ($857.35), allowed an exemption of only $142.55, out of the proceeds of sale of the attached goods in the hands of the sheriff.

The defendant appeals from this decree, and here assigns it as error, with several rulings excluding portions of the deposition of one Goldsmith.

R. A. McCLELLAN, and KYLE & SKEGGS, for appellant.

HUMES, SHEFFEY & SPEAKE, and W. R. FRANCIS, contra.

STONE, C. J.—The present suit grew out of the claim by Pinkus of statutory exemption of personal property of the value of one thousand dollars.—Code of 1886, § 2511.

The personal property of defendant, consisting of merchandise, was attached by his creditors, commencing on March 3, 1890, and continuing for two or more days. The attachment of Bamberger, Bloom & Co. was levied on March 5. This was the first levy made on the lot of merchandise which was found in an upper room, over Friedman's business house. On March 7—two days after this levy—Pinkus asserted his claim of exemptions in the attachment suits. The merchandise found over Friedman's store, and attached, was selected by him, and made the subject of his claim of exemptions. For reasons to be presently stated, neither the claim of exemptions asserted in the attachment suit, nor the attachment suit itself, has ever been brought to trial. As we have said, the first attachment—that of Cartwright—was not levied on the goods found over Friedman's business house.

Soon after the levy of the attachments, the attaching creditors, except Cartwright, who was first in point of time, filed bills against Pinkus and Cartwright, charging collusion

and fraud in the asserted claim, and in the attachment sued out by the latter, and praying to have said first attachment, and the claim it sought to enforce, displaced, and to have the claims of complainants paid, in preference to the alleged claim of Cartwright. Against these suits, which for the present service were consolidated, Pinkus, in April, 1890, renewed and re-filed his claim of exemption. We say renewed, for it specifies the same property to which claim had been interposed in the attachment suits on March 7. This was but a continuation of the original claim first filed, for the several bills filed, against which the claim was set up, were, for all practical purposes, only a continuation of the suit and contention inaugurated by the attachments.

This claim of exemptions being refiled in the chancery causes, the complainants gave written notice, demanding a verified inventory under section 2525 of the Code of 1886. An inventory was filed, the sufficiency of which was excepted to by complainants. The court overruled this exception, and thereupon the complainants filed a sworn contest of the exemption, under section 2520 of the Code. The contest asserted that, in the belief of affiant, the claim was "invalid entirely."

We hold that the chancellor did not err in holding the inventory rendered in this case sufficient. The effects of the petitioner had been attached, and were in the hands of the sheriff. In such conditions, it can not be presumed, or assumed, that he could give a fuller or more particular description than he did give. It results that the question— the only question—left for determination in the lower court, was whether petitioner was entitled to exemption of personal property, and the extent of his rightful claim. He made oath that he had no money, and that the property set forth in his inventory embraced his entire personal effects, "except his wearing apparel."

There is testimony in this record bearing on the relations and transactions between Pinkus and Cartwright, the first attaching creditor; and it is contended that these transactions are not consistent with fair dealing. We hold, however, that on the issue presented by this record such inquiry was wholly immaterial, except to the extent, if any, it showed that Pinkus had moneys or other effects which he failed to discover in his inventory. No matter how fraudulent his conduct and intention may have been, if he was a resident of Alabama, he was entitled to have set apart to him, as exempt from his debts, one thousand dollars in value of his personal property, to be selected by him.—Code of 1886,

§§ 2515, 2521. But his rightful claim on this account did not, and could not, extend beyond the one thousand dollars in value. There was testimony tending to show that the goods claimed exceeded $1,000 in value. If such was found to be the case, then the claim should have been disallowed for all in excess of the $1,000.

The real contest in this case is over certain deductions which the primary court made from the thousand dollars claimed by the petitioner. And, first, on account of certain moneys alleged to have been traced to his possession between the time when he first made his claim, and the filing of his inventory. It was shown in the testimony of Pinkus himself that, between the first filing of his claim of exemptions, and the filing of his inventory, he received from the insurance companies, as return premiums on the cancelled policies he had held on his stock of merchandise, the sum of $133.87. During the same time, he testified, he paid out $238.48— $190 to one person, and $48.48 to another. The payment of these sums shows that during that time he had in his possession at least as much money as the sums he paid out. These belonged to his inventory, and he must not be permitted to wrong his creditors by such payment. He must account for the money he thus held, or received as so much of his exemption.

It is claimed, and the primary court so held, that other moneys were traced to the possession of Pinkus. There is no testimony which shows that he did not utilize the money he received in the return premiums, in making the payments he admits he made, nor is any other money traced to his possession during that time. We can not, in the entire absence of testimony on the question, presume that he did not use the return premium money in these payments. We place the reduction of his exemption claim on account of moneys traced to his possession at $238.48.

Another reduction claimed and allowed arose as follows: Pinkus owed Friedman sixteen hundred and fifteen dollars. Just preceding the issue and levy of Cartwright's attachment, he paid this debt in the following manner: He traded and sold to him, Friedman, his notes and book accounts, amounting to about twenty-one hundred dollars. This was an absolute sale, and an absolute payment; but it was agreed that, if Friedman realized more from the claims than the amount due him, he was to pay the surplus to Pinkus. There was no testimony as to the amount collected on the notes and accounts, or to what extent they were collectible. The court deducted the sum of the excess of these claims over the

amount due Friedman, from the exemption he allowed to Pinkus. In this the court erred. There was no reliable testimony that any sum ever would accrue to petitioner from that source ; and if anything should accrue, no data were furnished for ascertaining its amount or value.

Notwithstanding we decline, for the reasons stated, to charge Pinkus with this balance, as a discount *pro tanto* from the amount of his exempt personalty, still we hold that it should have been noticed and embraced in his inventory. It was money to become due to him, in the event an excess should be realized; and whatever the sum might prove to be, his attaching creditors were entitled to it, to be reached, *perchance*, by garnishment.

It results from what we have said that Pinkus, under his claim, was entitled to personal property of the value of one thousand dollars, less two hundred and thirty-eight 48-100 dollars. This leaves for him, and subject to his rightful claim, seven hundred and sixty-one 52-100 dollars; $761.52.

Reversed and remanded, to be disposed of on the principles we have declared.

Reversed and remanded.